**ORIGINAL**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

v.

D-8 ZAHID SHEIKH,

Defendant.
_____/

No.: 17-cr-20465
Hon. Denise Page Hood

VIO: 18 U.S.C. § 1349

**SUPERSEDING INFORMATION**

THE UNITED STATES OF AMERICA CHARGES:

**General Allegations**

At all times relevant to this Superseding Information:

**The Medicare Program**

1. The Medicare program was a federal health care program providing benefits to persons who were 65 years of age or over, or disabled. Medicare was administered by the Centers for Medicare and Medicaid Services ("CMS"), a federal agency under the United States Department of Health and Human Services. Individuals who received benefits under Medicare were referred to as Medicare "beneficiaries."

2. Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3. Medicare has four parts: hospital insurance (Part A), medical insurance (Part B), Medicare Advantage (Part C), and prescription drug benefits (Part D). Part A covered physical therapy and skilled nursing services if a facility was certified by CMS as meeting certain requirements.

4. National Government Services ("NGS") was the CMS intermediary for Medicare Part A in the state of Michigan. Wisconsin Physicians Service ("WPS") administered the Medicare Part B program for claims arising in the state of Michigan. CMS contracted with NGS and WPS to receive, adjudicate, process, and pay claims.

5. TrustSolutions LLC was the Program Safeguard Contractor for Medicare Part A and Part B in the State of Michigan until April 24, 2012, when it was replaced by Cahaba Safeguard Administrators LLC as the Zone Program Integrity Contractor ("ZPIC"). The ZPIC is a contractor that investigates fraud, waste, and abuse. Cahaba was replaced by AdvancedMed in May 2015.

6. Payments under the Medicare program were often made directly to a provider of the goods or services, rather than to a Medicare beneficiary. This payment occurred when the provider submitted the claim to Medicare for payment, either directly or through a billing company.

7. Upon certification, the medical provider, whether a clinic, physician, or other health care provider that provided services to Medicare beneficiaries, was able

to apply for a Medicare Provider Identification Number ("PIN") for billing purposes. In its enrollment application, a provider was required to disclose to Medicare any person or company who held an ownership interest of 5% or more or who had managing control of the provider. A health care provider who was assigned a Medicare PIN and provided services to beneficiaries was able to submit claims for reimbursement to the Medicare contractor/carrier that included the PIN assigned to that medical provider.

8. By becoming a participating provider in Medicare, enrolled providers agreed to abide by the policies and procedures, rules, and regulations governing reimbursement. To receive Medicare funds, enrolled providers, together with their authorized agents, employees, and contractors, were required to abide by all provisions of the Social Security Act, the regulations promulgated under the Act, and applicable policies, procedures, rules, and regulations issued by CMS and its authorized agents and contractors. Health care providers were given and provided with online access to Medicare manuals and services bulletins describing proper billing procedures and billing rules and regulations.

9. Health care providers could only submit claims to Medicare for reasonable and medically necessary services that they rendered. Medicare regulations required health care providers enrolled with Medicare to maintain complete and accurate patient medical records reflecting the medical assessment and

diagnoses of their patients, as well as records documenting actual treatment of the patients to whom services were provided and for whom claims for payment were submitted by the physician. Medicare requires complete and accurate patient medical records so that Medicare may verify that the services were provided as described on the claim form. These records were required to be sufficient to permit Medicare, through WPS and other contractors, to review the appropriateness of Medicare payments made to the health care provider. Medicare would not pay claims procured through kickbacks and bribes.

10. Under certain circumstances, Medicare Part B covers the cost of home visits for evaluation and management services provided to a beneficiary by a physician in a private residence. Medicare will reimburse for physician home visits if (1) the visit is medically necessary in lieu of an office visit, and not just out of convenience; and (2) the medical necessity is documented at every visit. For a physician to bill for evaluation and management services provided to a beneficiary in the beneficiary's home, Medicare requires that the physician actually be present in the beneficiary's home.

11. A home health care agency was an entity that provided home health care services, including but not limited to skilled nursing, physical and occupational therapy, and speech pathology services to homebound patients.

12. Under Medicare Part A and Part B, home health care services were required to be reasonable and medically necessary to the treatment of the patient's illness or injury. Reimbursement for home health care services required that a physician certified the need for services and established a Plan of Care. Home health care services that were not certified by a physician or were not provided as represented were not reasonable and necessary. Medicare Part B covered the costs of physicians' services, including physician home visits, physician certification and recertification of home health care services, and physician supervision of home health care services. Generally, Medicare Part B covered these costs only if, among other requirements, they were medically necessary, ordered by a physician, and not induced by the payment of remuneration.

13. Medicare coverage for home health care services required that the following qualifying conditions, among others, be met: (a) the Medicare beneficiary is confined to the home; (b) the beneficiary needs skilled nursing services, physical therapy, or occupational therapy; (c) the beneficiary is under the care of a qualified physician who established a written Plan of Care for the beneficiary, signed by the physician and by a Registered Nurse ("RN"), or by a qualified physical therapist if only therapy services are required from the home health agency; (d) skilled nursing services or physical therapy services are provided by, or under the supervision of, a

licensed RN or physical therapist in accordance with the Plan of Care; and (e) the services provided are medically necessary.

14. Under Medicare Part B, for a laboratory to properly bill and be paid by Medicare for laboratory testing, including urine drug testing, the patient must, among other things, qualify for the testing, including urine drug testing, under Medicare's established rules and regulations. The testing also must be rendered according to Medicare's rules and regulations, and certain documents must be completed before a claim is submitted for reimbursement to Medicare.

15. For a laboratory to properly bill and be paid by Medicare for urine drug testing, the urine drug testing must be both reasonable and medically necessary. For example, urine drug testing is medically necessary if the patient presents to a physician with a suspected drug overdose. Regular, routine, or recreational drug screenings, however, are not reasonable or medically necessary. Further, the patient's medical record must include documentation that fully supports the reasonableness of and medical necessity for the urine drug testing.

16. To receive reimbursement for a covered service from Medicare, a provider must submit a claim, either electronically or using a form (*e.g.*, a CMS-1500 form or UB-92), containing the required information appropriately identifying the provider, patient, and services rendered, among other things.

### The Medical Providers

17. Pondview Personal Physicians ("Pondview") was a Michigan corporation doing business at 30236 John R Road, Madison Heights, Michigan 48071. Pondview was enrolled as a participating provider with Medicare and submitted claims to Medicare.

18. National Laboratories, Inc. ("National Laboratories") was a Michigan corporation doing business at 3011 West Grand Blvd., Ste. 310, Detroit, Michigan and 2100 West Alexis Rd., Ste. B-1, Toledo, Ohio. National Laboratories was enrolled as a participating provider with Medicare and submitted claims to Medicare.

### Defendant

19. Defendant **ZAHID SHEIKH**, a resident of Oakland County, was a physician and the owner of Pondview.

### COUNT 1
### 18 U.S.C. § 1349
### (Health Care Fraud Conspiracy)
### D-8 ZAHID SHEIKH

20. Paragraphs 1 through 19 of the General Allegations section of this Superseding Information are re-alleged and incorporated by reference as though fully set forth herein.

21. Beginning in or around 2012 and continuing through in or around July 2017, in the Eastern District of Michigan, and elsewhere, **ZAHID SHEIKH**, did willfully and knowingly combine, conspire, confederate, and agree with others

known and unknown to the United States Attorney, to commit certain offenses against the United States, that is: to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit programs, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, 1347.

## Purpose of the Conspiracy

22. It was a purpose of the conspiracy for **ZAHID SHEIKH** and his co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting or causing the submission of false and fraudulent claims to Medicare for claims based on kickbacks and bribes; (b) submitting or causing the submission of false and fraudulent claims to Medicare for services that were (i) medically unnecessary; (ii) not eligible for Medicare reimbursement; and/or (iii) not provided as represented; (c) concealing the submission of false and fraudulent claims to Medicare; and (d) diverting proceeds of the fraud for the personal use and benefit of the defendant and his co-conspirators in the form of compensation and other remuneration.

## Manner and Means

The manner and means by which the defendant and his co-conspirators sought to accomplish the purpose of the conspiracy included, among others, the following:

23. In or around June 8, 2005, **ZAHID SHEIKH** incorporated Pondview. **SHEIKH** falsely certified to Medicare on behalf of Pondview that he agreed to abide by Medicare laws, regulations, and program instructions. These laws, regulations, and program instructions include, but are not limited to, the Federal anti-kickback statute.

24. On or about April 24, 2014, Mashiyat Rashid falsely certified to Medicare on behalf of National Laboratories that he agreed to abide by Medicare laws, regulations, and program instructions. These laws, regulations, and program instructions include, but are not limited to, the Federal anti-kickback statute.

25. **ZAHID SHEIKH** and others falsified, fabricated, altered, and caused the falsification, fabrication, and alteration of medical records of Pondview beneficiaries, including but not limited to patient home visit notes, to support claims that were medically unnecessary, not eligible for Medicare reimbursement, and/or not provided as represented.

26. **ZAHID SHEIKH** referred Pondview beneficiaries to co-conspirator home health providers for medically unnecessary home health care services. In many instances, these Pondview beneficiaries were not "homebound."

27. Mashiyat Rashid and others devised and participated in a scheme to pay illegal kickbacks and bribes to **ZAHID SHEIKH** and others in return for referring urine samples of Pondview beneficiaries to National Laboratories and arranging for National Laboratories to perform services, including urine drug testing, so that National Laboratories could bill Medicare for services that were obtained through illegal kickbacks and bribes, medically unnecessary, not eligible for Medicare reimbursement, and/or not provided as represented.

28. Mashiyat Rashid, **ZAHID SHEIKH**, and others disguised the nature and source of these kickbacks and bribes by designating payments as "marketing agreements," or entering into sham contracts or employment relationships. **ZAHID SHEIKH**, and others also disguised the nature and source of these kickbacks and bribes by having the payments made to R.K. Internationals, a company owned or controlled by a personal associate of **ZAHID SHEIKH's**.

29. During the course of the conspiracy charged in Count 1 of the Superseding Information, **ZAHID SHEIKH** submitted or caused the submission of false and fraudulent claims to Medicare in an approximate amount of $6.8 million.

In violation of Title 18, United States Code, Section 1349.

### FORFEITURE ALLEGATIONS
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461;
18 U.S.C. § 982(a)(7))

30. The above allegations contained in this Superseding Information are

hereby incorporated by reference as if fully set forth herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Sections 981(a)(1)(C) and 982; and Title 28, United States Code, Section 2461.

31. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) together with Title 28, United States Code, Section 2461, as a result of the foregoing violation, as charged in Count 1 of this Superseding Information, the defendant, **ZAHID SHEIKH**, shall forfeit to the United States any property, real or personal, which constitutes or is derived from proceeds traceable to the commission of the offense.

32. Pursuant to Title 18, United States Code, Section 982(a)(7), as a result of the foregoing violations, as charged in Count 1 of this Superseding Information, the defendant, **ZAHID SHEIKH**, shall forfeit to the United States any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the offense.

33. Such property includes, but is not limited to, a forfeiture money judgment, in an amount to be proved in this matter, representing the total amount of proceeds and/or gross proceeds obtained as a result of Defendant's violations as charged in Count 1 of this Superseding Information.

34. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), the defendant, **ZAHID**

**SHEIKH**, shall forfeit substitute property, up to the value of the properties described above or identified in any subsequent forfeiture bills of particular, if, by any act or omission of the defendant, the property cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property that cannot be subdivided without difficulty.

DANIEL L. LEMISCH
ACTING UNITED STATES ATTORNEY

WAYNE F. PRATT
Chief, Health Care Fraud Unit
Assistant United States Attorney
211 W. Fort St., Suite 2001
Detroit, MI 48226
(313) 226-9583
wayne.pratt@usdoj.gov

MALISA DUBAL
Assistant Chief
Criminal Division, Fraud Section
211 W. Fort St., Suite 2001
Detroit, MI 48226
(202) 660-2001
malisa.dubal@usdoj.gov

JACOB FOSTER
Trial Attorney
Criminal Division, Fraud Section
U.S. Department of Justice
1400 New York Avenue, N.W.
Eighth Floor
Washington, D.C. 20005
(202) 305-3520
jacob.foster@usdoj.gov

Dated: December 28, 2017

ORIGINAL

| United States District Court<br>Eastern District of Michigan | Criminal Case Cover Sheet | Case Number<br>17-cr-20465 |
|---|---|---|

NOTE: It is the responsibility of the Assistant U.S. Attorney signing this form to complete it accurately in all respects.

| Companion Case Information | Companion Case Number: |
|---|---|
| This may be a companion case based upon LCrR 57.10 (b)(4)[1]: | Judge Assigned: |
| ☐ Yes  ☒ No | AUSA's Initials: _MRD_ |

**Case Title:** USA v. Zahid Sheikh

**County where offense occurred:** Oakland County, Wayne County

**Check One:** ☒ Felony  ☐ Misdemeanor  ☐ Petty

____Indictment/____Information --- **no prior complaint.**
____Indictment/____Information --- based upon prior complaint [Case number: _____]
____Indictment/ ✓ Information --- based upon LCrR 57.10 (d) *[Complete Superseding section below]*.

## Superseding Case Information

**Superseding to Case No:** 17-cr-20465        **Judge:** Hon. Denise Page Hood

☐ Corrects errors; no additional charges or defendants.
☐ Involves, for plea purposes, different charges or adds counts.
☒ Embraces same subject matter but adds the additional defendants or charges below:

| Defendant name | Charges | Prior Complaint (if applicable) |
|---|---|---|
| Zahid Sheikh | 18 U.S.C. § 1349 | |

**Please take notice that the below listed Assistant United States Attorney is the attorney of record for the above captioned case.**

December 28, 2017
Date

_Marisa Dubal for_

Jacob Foster, Trial Attorney
211 West Fort Street, Detroit, MI 48226
Phone: (202) 615 - 6521
Fax:    (313) 226 - 0816
E-Mail address: Jacob.Foster@usdoj.gov
Attorney Bar #: CA 250785

[1] Companion cases are matters in which it appears that (1) substantially similar evidence will be offered at trial, or (2) the same or related parties are present, and the cases arise out of the same transaction or occurrence. Cases may be companion cases even though one of them may have already been terminated.